FILED
U.S. DIST. COURT
BRUNSWICK DIV.

2005 MAY 24 A 9 14

CLERK
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

ALONZO HAWKINS, SR.,

Plaintiff,

vs.

CIVIL ACTION NO.: CV503-121

JIM WETHERINGTON, Commissioner;
BILL KISSEL, Director of Health Services;
JOSEPH PARIS, Medical Director,
and Dr. PETER ANKOH,

Defendants.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, an inmate currently incarcerated at Ware State Prison in Waycross, Georgia, has filed an action pursuant to 42 U.S.C.A. § 1983 contesting certain conditions of his confinement while incarcerated at Autry State Prison in Pelham, Georgia. Defendants filed a Motion for Summary Judgment. Plaintiff filed a Response. For the following reasons, Defendants' Motion for Summary Judgment should be **GRANTED**.

## STATEMENT OF THE CASE

Plaintiff asserts that Defendants were deliberately indifferent to his serious medical needs. Plaintiff alleges that Defendant Wetherington, the former Commissioner of the Georgia Department of Corrections ("DOC"); Defendant Kissel, the Director of Health Services for the DOC; Defendant Paris, the Medical Director for the DOC; and Defendant Ankoh, the Medical Director at Autry State Prison delayed his back surgery unnecessarily for over twenty two (22) months. Plaintiff contends that he was in severe pain this entire time and that Defendants were aware of his pain but did nothing to help him.

Defendants generally allege that they were not deliberately indifferent to Plaintiff's serious medical needs. Defendants Wetherington and Kissel assert that they are not trained in the field of medicine and must defer to medical personnel on medical decisions. Defendant Paris contends that his position as the Medical Director for the DOC does not involve providing medical services at either facility in which Plaintiff was housed, nor was he involved in any direct examination or care of Plaintiff. Defendant Ankoh avers that he did nothing to cause the delay in Plaintiff receiving back surgery.

## STANDARD OF DETERMINATION

Summary judgment should be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving part[ies are] entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); Midrash Sephardi, Inc. v. Town of Surfside, 366 F.3d 1214, 1223 (11th Cir. 2004). An issue of fact is "material" if it might affect the outcome of the case, and an issue of fact is "genuine" when it could cause a rational trier of fact to find in favor of the nonmoving party. Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259-60 (11th Cir. 2004). The court must determine "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Id. at 1260 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed.2d 202 (1986)).

The moving parties bear the burden of establishing that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. Williamson Oil Co., Inc. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003). Specifically, the

2

moving parties must identify the portions of the record which establish that there are no genuine issues of material fact. Hickson, 357 F.3d at 1260 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed.2d 265 (1986)). When the nonmoving party would have the burden of proof at trial, the moving parties may discharge their burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial. Id. In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in a light most favorable to the nonmoving party. Acevado v. First Nat'l Bank, 357 F. 3d 1244, 1247 (11th Cir. 2004).

## DISCUSSION AND CITATION OF AUTHORITY

The Eighth Amendment's proscription against cruel and unusual punishment imposes a constitutional duty upon prison officials to take reasonable measures to guarantee the safety of prison inmates. This duty to safeguard also embodies the principle expressed by the Court in Estelle v. Gamble, 429 U.S. 97, 104, 97 S. Ct. 285, 291, 50 L. Ed.2d 251 (1976), forbidding prison officials from demonstrating deliberate indifference to the serious medical needs of inmates. Farmer v. Brennan, 511 U.S. 825, 832, 114 S. Ct. 1970, 1976, 128 L. Ed.2d 811 (1994).

Like any deliberate indifference claim, the Estelle analysis incorporates both an objective and a subjective component. Hill v. DeKalb Reg'l Youth Detention Ctr., 40 F.3d 1176, 1186 (11th Cir. 1994). The objective component is "contextual and responsive to 'contemporary standards of decency.'" Hudson v. McMillian, 503 U.S. 1, 9, 112 S. Ct. 995, 1000, 117 L. Ed.2d 156 (1992) (quoting Estelle, 429 U.S. at 103, 97 S. Ct. at 290). Under that standard, "deliberate indifference to medical needs amounts to an Eighth Amendment

3

violation only if those needs are 'serious'." Hill, 40 F.3d at 1186 (quoting Hudson, 503 U.S. at 9, 112 S. Ct. at 1000). In the Eleventh Circuit, a medical need is serious if it "has been diagnosed by a physician as mandating treatment or [is] one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Hill, 40 F.3d 1187 (internal citations omitted). As to the subjective component, the Eleventh Circuit "has consistently held that knowledge of the need for medical care and intentional refusal to provide that care constitute deliberate indifference." Hill, 40 F.3d at 1186 (quoting Mandel v. Doe, 888 F.2d 783, 788 (11th Cir. 1989)). To demonstrate deliberate indifference in the medical context, Defendants must have intentionally delayed access to medical care for such a period as to constitute the unnecessary and wanton infliction of pain. Adams v. Poag, 61 F.3d 1537, 1543-44 (11th Cir. 1995). However, it is legally insufficient to sustain a cause of action for deliberate indifference to serious medical needs simply because the inmate did not receive the medical attention he deemed appropriate. See Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (noting that a mere difference of opinion as to a prisoner's diagnosis or course of treatment does not support a claim under the Eighth Amendment).

Defendants Wetherington and Kissel assert they "are not medical employees, have no medical training, do not provide medical care to inmates, and played no part . . . in the medical treatment provided to" Plaintiff. (Defs.' Br., p. 14.) These two Defendants also assert that Standard Operating Procedure ("SOP") VH01-0002 requires non-medical personnel to defer to medical personnel in matters of medical judgment. Defendants Wetherington and Kissel contend that they did not deny Plaintiff medical care, nor were they deliberately indifferent to his serious medical needs. Defendant Paris avers that

4

AO 72A
(Rev. 8/82)

although he is a physician, his position as the Medical Director for the DOC is to supervise the delivery of medical services to all inmates, not to provide medical care at either of the facilities in which Plaintiff was housed. These Defendants allege that they have no independent recollection of Plaintiff informing them of any complaints he had about his medical care.

Defendant Ankoh asserts that he was responsible for Plaintiff's medical care while he was incarcerated at Autry State Prison[1]. Defendant Ankoh asserts that he relied on specialized consultants to assist him in Plaintiff's care and treatment for his back complaints. Defendant Ankoh alleges that some delays in Plaintiff's case were "unavoidable and based on the need to request the consecutive performance of complex diagnostic tests, including an MRI, an EMG, and a CT myelogram[.]" (Defs.' Br., p. 17.) Defendants contend that other delays were because it was difficult obtaining appointments with neurosurgeons in Savannah or Waycross. Defendants also contend that Plaintiff was seen by different neurosurgeons, each of whom requested additional tests and visits before recommending surgery. Defendants also contend that the DOC's Utilization Management contract was changed to a different provider in October 2002 and that this change involved "complex logistics" which may have contributed to the delay. (Id.) However, Defendants assert that no delay lasted longer than a few weeks and "all involved providers responding to [the delays] by repeating consults [and] requests for treatments, and ensuring that [Plaintiff] received continuity of care." (Id.) Defendants allege that

---

[1] Plaintiff did not name as a Defendant Dr. Ferrell, the Medical Director at Ware State Prison. A review of the documents submitted by the parties indicates that Plaintiff's Complaint covered the time period after he was transferred to Ware State Prison from Autry State Prison on December 11, 2001 (Doc. No. 66, Ex. G, p. 2), as well as time he was housed at Autry State Prison. The Court will utilize documentation submitted covering the entire relevant period.

5

Plaintiff always had access to and frequently saw Doctors Ankoh and Ferrell, as well as Nurse Practitioner Gail Ferra, all of whom monitored Plaintiff's developments closely, discussed the case with Plaintiff, verified the absence of neurological damage, and gave Plaintiff medications. Defendants also allege that Plaintiff's medical records do not indicate that surgery should have been performed any earlier than it was on January 9, 2003. Defendants further allege that medical staffs at Autry and Ware State Prisons managed Plaintiff's condition "according to the standard of care practiced by other skilled medical professionals under like circumstances and similar conditions." (Defs.' Br., p. 18.)

Plaintiff contends that all Defendants acted with deliberate indifference to his serious medical needs. Plaintiff asserts that he wrote Defendant Wetherington a letter regarding his complaints about his perceived lack of medical attention; Plaintiff contends that Wetherington's denial of receiving this letter constitutes an issue for the factfinder in this case. Plaintiff also asserts that Defendants Kissel and Paris were "directly involved" in ensuring that he received his surgery in a timely manner based on their duties within the DOC. (Pl.'s Br., pp. 16-17.) Plaintiff alleges that Defendant Paris knew that four different doctors has diagnosed him with a serious medical condition which required surgery. Plaintiff also alleges that Defendant Paris, who has extensive medical training, was aware that Plaintiff had to use crutches to help him walk and that even a lay person could see the necessity for surgery. Plaintiff further alleges that Defendant Ankoh knew that Plaintiff had severe leg and back pain while he was incarcerated at Autry State Prison because Defendant Ankoh was forced to send the medical team to pick Plaintiff off the sidewalk; at that time, Plaintiff was taken to the infirmary, and Defendant Ankoh gave him a shot to alleviate his pain. Plaintiff asserts that Defendant Ankoh should have upgraded his

6

consultation type at that time from routine to urgent to allow Plaintiff to have surgery sooner, just as he did for other inmates incarcerated at Autry State Prison. Plaintiff also asserts that Defendant Ankoh was aware that his condition required surgery, as a neurosurgeon who examined Plaintiff while he was incarcerated at Central State Prison in Macon, Georgia, concluded.[2] Plaintiff further asserts that Defendants cannot justify the delay in Plaintiff having surgery because they violated their duties proscribed by Georgia law and because other inmates with the same problems as Plaintiff had surgery in a much shorter period of time than Plaintiff. (Pl.'s Br., pp. 33-34; Pl.'s Stmt. of Mat. Facts, p. 1.)

A review of the documents submitted by the parties reveals that Plaintiff was seen by medical personnel at Autry State Prison and Ware State Prison on 14 occasions between October 19, 2001, and January 9, 2003, the date of his surgery. During this same time period, Plaintiff was treated by outside sources on 13 occasions. (Doc. No. 66, Ex. E.) The subject of all but one of these visits concerned Plaintiff's back and leg problems. The records for all but one of these visits indicate that Plaintiff was taking ibuprofen or Darvocet for the pain stemming from his back problems. It is interesting to note that Plaintiff never states in his pleadings in opposition to Defendants' Motion for Summary Judgment that Defendants denied him medical care entirely; instead, Plaintiff only asserts that he did not receive surgery at the time *he* thought he needed to have surgery. Plaintiff uses as examples several other inmates he claims were "upgraded" and received surgery within four (4) months of having problems, whereas he was made to wait for over 22

---

[2] It appears that Plaintiff was housed at Autry State Prison for a rather short period of time in 2001. Plaintiff asserts that he was approved for surgery in May 2001 while he was incarcerated at Macon State Prison (Pl.'s Br., p. 17), and he was transferred from Autry State Prison on December 11, 2001. (Doc. No. 66, Ex. G, p. 2.)

months before receiving surgery. The Court is not in the position to evaluate these other inmates' situations, nor is the Court in the position to second-guess the judgment of the medical personnel who examined and evaluated Plaintiff. Medical personnel saw Plaintiff on a regular basis and made recommendations for Plaintiff to see outside sources; these outside sources recommended treatment for Plaintiff, most notably Dr. Shu, who prescribed physical therapy for Plaintiff before ultimately determining that surgery was needed. At best, Plaintiff has revealed that a difference of opinion existed between him and medical personnel at Autry and Ware State Prisons. However, this does not rise to the level of a constitutional violation. See Harris, 941 F.2d at 1505. In addition, Plaintiff has failed to show the existence of a genuine issue of material fact as to whether Defendants violated contemporary standards of decency, i.e., Plaintiff fails to show that a genuine issue of material fact exists as to whether Defendants violated the objective component of the deliberate indifference analysis. Nor did Defendants "intentionally delay[ ] access to medical care for such a period as to constitute the unnecessary and wanton infliction of pain." See Adams, 61 F.3d at 1543-44. In sum, Plaintiff has failed to show the existence of a genuine issue of material fact as to whether Defendants[3] were deliberately indifferent to his serious medical needs.

It is unnecessary to address the remaining grounds set forth in Defendants' Motion for Summary Judgment.

---

[3] A review of Plaintiff's deposition indicates that he wishes to hold Defendants Wetherington, Kissel, and Paris liable based solely on their positions within the DOC. (Doc. No. 67, Ex. K, pp. 7-8.)

## CONCLUSION

Based on the foregoing, it is my **RECOMMENDATION** that Defendants' Motion for Summary Judgment (Doc. No. 64) be **GRANTED**.

**SO REPORTED** and **RECOMMENDED**, this 24th day of May, 2005.

JAMES E. GRAHAM
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev. 8/82)

# United States District Court
## Southern District of Georgia

HAWKINS  )

vs ) CASE NUMBER CV503-121

WETHERINGTON, ET AL ) DIVISION WAYCROSS

The undersigned, a regularly appointed and qualified deputy in the office of the Clerk of this district, while conducting the business of the Court for said division, does hereby certify the following:

1. Pursuant to the instructions from the Court and in the performance of my official duties, I personally placed in the United States Mail a sealed envelope, and properly addressed to each of the persons, parties or attorneys named below; and

2. That the aforementioned enveloped contained a copy of the document dated 5/24/05, which is part of the official record of this case.

Date of Mailing: 5/24/05

Date of Certificate  [X] same date,  or _____

Scott L. Poff, Clerk

By: _Sherry Taylor_
Sherry Taylor, Deputy Clerk

**Name and Address**

Alonzo Hawkins, 09354, EF157886, Ware Correctional Inst., 3620 N Harris Road, Waycross, GA 31501
Andrew Magruder
Jesse Owen

[ ] Copy placed in Minutes
[ ] Copy given to Judge
[X] Copy given to Magistrate

# United States District Court
## Southern District of Georgia

HAWKINS )

vs ) CASE NUMBER CV503-121

WETHERINGTON, ET AL. ) DIVISION WAYCROSS

The undersigned, a regularly appointed and qualified deputy in the office of the Clerk of this district, while conducting the business of the Court for said division, does hereby certify the following:

1. Pursuant to the instructions from the Court and in the performance of my official duties, I personally placed in the United States Mail a sealed envelope, and properly addressed to each of the persons, parties or attorneys named below; and

2. That the aforementioned enveloped contained a copy of the document dated 5/24/05, which is part of the official record of this case.

Date of Mailing: 5/24/05

Date of Certificate  ☒ same date,   or _____

Scott L. Poff, Clerk

By: _____
Sherry Taylor, Deputy Clerk

**Name and Address**

Alonzo Hawkins, 09354, EF157886, Ware Correctional Inst., 3620 N Harris Road, Waycross, GA 31501
Andrew Magruder
Jesse Owen

☐ Copy placed in Minutes
☐ Copy given to Judge
☒ Copy given to Magistrate